UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER LAMONT BRADSHAW, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant. | 3:21-CV-03007-RAL OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS AND DENYING PETITIONER'S § 2255 MOTION |

Christopher Lamont Bradshaw ("Bradshaw") filed a motion under 28 U.S.C. § 2255 in this case to vacate, set aside or correct his criminal convictions for conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance. Bradshaw claims that he received ineffective assistance from counsel at his jury trial because his counsel failed to call his co-defendant, whom Bradshaw alleges would have testified to his innocence. The Government has moved to dismiss. For the reasons set forth below, this Court denies Bradshaw's § 2255 petition and grants the Government's motion to dismiss.

**I. Facts**

Bradshaw filed this pro se motion to vacate, set aside, or correct his sentence in criminal case 17-30101-2 pursuant to 28 U.S.C. § 2255 relating to his convictions following a jury trial. Doc. 1. On September 20, 2018, a jury found Bradshaw guilty of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§

1

841(a)(1) and 841(b)(1)(B). Doc. 18. Bradshaw was sentenced to serve 120-month sentences on each count concurrently. Doc. 18.

In his § 2255 motion, Bradshaw seeks relief from alleged ineffective assistance of counsel. Doc. 1. Specifically, he argues that his counsel failed to call a critical witness, Bradshaw's co-defendant, Antonio Foster, USA v. Foster, 3:17-cr-30101-RAL-1, whom Bradshaw alleges would have testified to Bradshaw's innocence. Doc. 1. Foster had signed a plea agreement and factual basis statement, sworn under oath to be true at his change of plea hearing, stating that Foster and Bradshaw had been involved together in a conspiracy to distribute methamphetamine. Doc. 12 at ¶ 2; see USA v. Foster, 3:17-cr-30101-RAL-1 Docs. 44, 45, 46. Foster later recanted that Bradshaw participated in the methamphetamine distribution conspiracy during an interview with law enforcement in custody. Docs. 1-2, 12 at ¶ 2.

On May 5, 2021, the Court screened Bradshaw's § 2255 and ordered the Government to file an answer, motion, or other response. Doc. 4. The Government filed a motion to extend time to answer and requested that the Court order Bradshaw's trial counsel to respond to allegations of ineffective assistance. Docs. 5, 6. This Court granted the motion, Doc. 7, and after Bradshaw waived his attorney-client privilege, Doc. 8-2, ordered Bradshaw's trial counsel to respond to the allegations of ineffective assistance of counsel. Doc. 9.

Bradshaw's trial counsel filed an affidavit contesting the claim of ineffective assistance on August 9, 2021. Doc. 12. Bradshaw's trial counsel informed the Court that he discussed with Bradshaw the "pros and cons" of calling co-defendant Foster to testify, considering the Government could use Foster's plea agreement, factual basis statement, and transcript of change of plea hearing to implicate Bradshaw if Foster were to testify that Bradshaw was not his

accomplice.[1] Docs. 1-2, 12 at ¶ 2. Further, Bradshaw's counsel noted that Foster's recantation could result in impeachment of Foster based on a statement Foster made to another witness, A.G., and that A.G.[2] recalled Foster telling her during prisoner transport from Rapid City that "he wasn't going to testify because he feared retaliation from Christopher Bradshaw." Doc. 12 at ¶ 4. Bradshaw's trial counsel also stated that he discussed with Foster's attorney what Foster would likely say if called during Bradshaw's trial. Doc. 12 at ¶ 5. Foster's attorney told Bradshaw's attorney—both in and out of this Court's chambers—that Foster planned to exercise his Fifth Amendment right to remain silent. Docs. 1-2, 12 at ¶ 5–6. Bradshaw agreed with his trial counsel that it was in his interest not to call Foster as a trial witness. Docs. 1-2, 12 at ¶ 8.

Following the filing of Bradshaw's trial counsel's affidavit, the Government responded and filed a motion to dismiss and memorandum in support on September 29, 2021. Docs. 16, 17, 18. On October 29, 2021, Bradshaw requested additional time to file his response to the motion to dismiss, Doc. 20, which the Court granted. Doc. 21. On December 20, 2021, Bradshaw made another request for additional time to answer, Doc. 22, which the Court granted extending the time for Bradshaw to respond to February 1, 2022. Doc. 23. As of the date of this order and opinion, Bradshaw has yet to respond.

**II. Discussion**

Bradshaw seeks relief pursuant to 28 U.S.C. § 2255. Section 2255(a) states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may

---

[1] The record supports the information in trial counsel's affidavit. After the prosecution rested its case, Bradshaw discussed with counsel on September 19, 2018, in the presence of the court reporter, whether to call Foster and agreed he did not wish to do so. See Docs. 1-2, 12 at ¶ 7.
[2] This Court uses initials to protect the identity of the cooperating witness.

3

move the court which imposed the sentence to vacate, set aside or correct the sentence.

When considering a § 2255 motion, the Court holds an evidentiary hearing "unless the motion and the files and the records of the case conclusively show that [the prisoner] is entitled to no relief." Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up and citation omitted). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (cleaned up and citation omitted). The Eighth Circuit has stated:

> A § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.

Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) (cleaned up and citation omitted). Because the record conclusively demonstrates that Bradshaw is not entitled to relief, an evidentiary hearing is not necessary in this case. The Court can dismiss this case on the merits upon analysis of the substance of Bradshaw's § 2255 motion alleging ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 339 (1963); Johnson v. Zerbst, 304 U.S. 458, 459 (1938); Powell v. Alabama, 287 U.S. 45, 63 (1932). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but

for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005).

The first part of the Strickland test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 689). Courts are not to "second-guess" trial strategy. Williams, 452 F.3d at 1013. "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).

"The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error[.]" Williams, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019).

"Because the defendant must satisfy both prongs of the Strickland test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." Id. Bradshaw's ineffective assistance of counsel claim does not satisfy either.

Bradshaw cannot satisfy the first part of the Strickland test because the decision not to call Foster as a witness was part of a rational trial strategy. "The decision not to call a witness is a

5

virtually unchallengeable decision of trial strategy." Ford, 917 F.3d at 1024. The Eighth Circuit has stated that courts should afford "counsel's decision in such matters some deference because there is considerable risk inherent in calling any witness; if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences against the party who called him or her." Id. at 1025.

Bradshaw's trial counsel made the decision not to call Foster for reasons that were objectively reasonable given the substantial risk of impeachment and deference to be afforded trial strategy. See United States v. Orr, 636 F.3d 944, 955–56 (8th Cir. 2011) (stating the district court was correct in holding counsel's actions reasonable given "the potential costs of calling the witness outweighed the potential benefits") (cleaned up and citation omitted)); see also United States v. Staples, 410 F.3d 484, 489 (8th Cir. 2005) ("In light of the deferential presumption, the prospects for impeachment, and the risk inherent in calling any witness," the Eighth Circuit concluded that defense counsel "did not perform in an objectively unreasonable manner by deciding not to call the two witnesses"). After all, the attorney for Foster advised that Foster was likely to invoke his Fifth Amendment right if called which could have led the jury to infer that he was in fact in a conspiracy to distribute methamphetamine with Bradshaw. Foster had admitted in a signed factual basis statement and on the record during his change of plea hearing that he was in a conspiracy to distribute methamphetamine with Bradshaw. Even if Bradshaw was right that Foster would have testified to exculpate Bradshaw consistent with his post-plea retraction, then Foster could have been impeached with his factual basis statement, his affirmation under oath at his change of plea hearing that the factual basis statement was completely accurate, and potentially with testimony from A.G. that Foster said he was not going to testify against Bradshaw because he feared

6

retaliation from Bradshaw. It was not ineffective assistance of counsel for Bradshaw's trial counsel to not call Foster as a witness.

Bradshaw asserts that his counsel did not discuss the "pros and cons" of calling Foster to testify. Doc. 1. However, a review of the transcript of the discussion between Bradshaw and counsel demonstrate that Bradshaw was aware of the potential benefits of Foster's testimony (i.e., the possibility of examining Foster on a conversation where he allegedly recanted to law enforcement that Bradshaw was part of the drug conspiracy) and pitfalls (i.e., that Foster would likely refuse to answer any questions and that if Foster did testify, prosecutors would impeach him with his plea agreement and factual basis statement implicating Bradshaw). In fact, after Bradshaw's counsel established with Bradshaw that they had read and discussed a transcript of the interview where Foster recanted his allegations against Bradshaw and Foster's plea agreement, factual basis statement and transcript of change of plea hearing in which Foster did implicate Bradshaw, Bradshaw's counsel confirmed with him regarding the decision to refrain from calling Foster to testify. Doc. 1-2 at 8–9.

> BRADSHAW'S COUNSEL: "And I think I may have covered this, but I just want to be sure. You heard what he told the judge in court at his change of plea hearing, correct?"
>
> BRADSHAW: "Yes."
>
> BRADSHAW'S COUNSEL: "We read that transcript?"
>
> BRADSHAW: "Yes."
>
> BRADSHAW'S COUNSEL: "After our conversation, you determined that, weighing the pros and cons, you do not wish to call Antonio Foster to the stand; is that correct?"
>
> BRADSHAW: "Yes."

Doc. 1-2 at 8–9. Bradshaw agreed at trial with the decision not to have Foster testify.

Even if the first prong of the Strickland test were satisfied, Bradshaw suffered no prejudice from the failure to call Foster as a witness. To determine whether Bradshaw was prejudiced by his counsel's failure to call a certain witness to testify, the court "must consider the totality of the evidence before the judge or jury," and "gauge the likely outcome of a trial based on this total body of evidence." Williams, 452 F.3d at 1013 (cleaned up and citation omitted). "In doing this analysis, the court should be mindful of (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." Id. (cleaned up and citation omitted).

Bradshaw cannot show the failure to call Foster meets the second portion of the Strickland test because he has not proven there is a "reasonable probability" that calling Foster would have resulted in a different verdict. Based on what Foster's own counsel disclosed, Foster was likely to remain silent on the stand, providing no benefit to Bradshaw if called. Alternatively, if Foster had recanted his change of plea and factual basis statement about being involved with Bradshaw in a methamphetamine distribution conspiracy, the Government would have impeached his testimony during cross-examination with evidence of Foster's plea agreement, factual basis statement, and transcript from the change of plea hearing, as well as potentially introducing highly prejudicial impeachment evidence from A.G. of Foster saying that he was recanting out of fear of Bradshaw.

Finally, even if Foster had testified favorably and survived impeachment, there was other evidence that implicated Bradshaw in the drug distribution conspiracy. Several witnesses testified that Foster and Bradshaw had come to the Rosebud Indian Reservation together. Witnesses had testified that Foster and Bradshaw traveled together in the same car, stayed at the same place on the Reservation, and were together when Foster was selling methamphetamine both at a residence

8

and from the car. When law enforcement descended on the place where Foster and Bradshaw were staying together, they attempted to flee in the same car. When the car got hung up in a fence, they both jumped out of the car and ran from law enforcement. Evidence of methamphetamine distribution was found both in the car and with Foster. On appeal, the United States Court of Appeals for the Eighth Circuit discussed why the evidence was sufficient to convict Bradshaw on both counts. United States v. Bradshaw, 955 F.3d 699, 705–06 (8th Cir. 2020), reh'g denied (June 5, 2020). Bradshaw cannot show that the failure to call Foster to testify prejudiced his proceedings to the degree risking constitutional error under the second prong of the Strickland test. See Jackson v. United States, 956 F.3d 1001, 1007 (8th Cir. 2020) (denying a § 2255 petition because the "quantity of evidence against [the defendant] shows that he was not prejudiced by [counsel's] failure to subpoena the two witnesses").

### III. Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that Bradshaw's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss Bradshaw's § 2255 Motion, Doc. 17, is granted.

DATED this 23rd day of February, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE