UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER LAMONT BRADSHAW, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant. | 3:21-CV-03007-RAL<br><br>OPINION AND ORDER DENYING PETITIONER'S MOTION TO RECONSIDER |

Christopher Lamont Bradshaw ("Bradshaw") filed a motion under 28 U.S.C. § 2255 in this case to vacate, set aside or correct his criminal convictions for conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance. He claims he received ineffective assistance from counsel at his jury trial. After Bradshaw failed to timely respond, this Court considered the record in the case and granted the Government's motion to dismiss. Bradshaw then filed a request to reconsider. This Court now denies Bradshaw's motion to reconsider for the reasons explained below.

**I. Facts on Motion to Reconsider**

Bradshaw filed this pro se motion to vacate, set aside, or correct his sentence in criminal case 17-CR-30101-2 pursuant to 28 U.S.C. § 2255 relating to his convictions following a jury trial. Doc. 1. On September 20, 2018, a jury found Bradshaw guilty of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(B). Doc. 18. Bradshaw was sentenced to serve 120-month sentences on each count concurrently. Doc. 18.

In his § 2255 motion, Bradshaw sought relief from alleged ineffective assistance of counsel. Doc. 1. He argued his counsel failed to call a critical witness, Bradshaw's co-defendant Antonio Foster, USA v. Foster, 3:17-CR-30101-RAL-1, whom Bradshaw alleges would have testified to Bradshaw's innocence. Doc. 1. Foster had signed a plea agreement and factual basis statement, sworn under oath to be true at his change of plea hearing, stating that Foster and Bradshaw had been involved together in a conspiracy to distribute methamphetamine. Doc. 12 at ¶ 2; see USA v. Foster, 3:17-CR-30101-RAL-1 Docs. 44, 45, 46. Foster later recanted that Bradshaw participated in the methamphetamine distribution conspiracy during an interview with law enforcement in custody. Docs. 1-2, 12 at ¶ 2.

On May 5, 2021, this Court screened Bradshaw's § 2255 motion and ordered the Government to file an answer, motion, or other response. Doc. 4. The Government filed a motion to extend time to answer and sought an order requiring Bradshaw's trial counsel to respond to allegations of ineffective assistance. Docs. 5, 6. This Court granted the motion, Doc. 7, and after Bradshaw waived his attorney-client privilege, Doc. 8-2, ordered Bradshaw's trial counsel to respond to the allegations of ineffective assistance of counsel. Doc. 9.

Bradshaw's trial counsel filed an affidavit contesting the claim of ineffective assistance on August 9, 2021. Doc. 12. Bradshaw's trial counsel informed the Court that he discussed with Bradshaw the "pros and cons" of calling co-defendant Foster to testify considering that the Government could use Foster's plea agreement, factual basis statement, and transcript of change of plea hearing to implicate Bradshaw if Foster were to testify that Bradshaw was not his

accomplice.¹ Docs. 1-2, 12 at ¶ 2. Further, Bradshaw's counsel noted that Foster's recantation could result in impeachment of Foster based on a statement Foster made to another witness, A.G.², who recalled Foster telling her during prisoner transport from Rapid City that "he wasn't going to testify because he feared retaliation from Christopher Bradshaw." Doc. 12 at ¶ 4. Bradshaw's trial counsel also stated that he discussed with Foster's attorney what Foster would likely say if called during Bradshaw's trial. Doc. 12 at ¶ 5. Foster's attorney told Bradshaw's attorney—both in and out of this Court's chambers—that Foster planned to exercise his Fifth Amendment right to remain silent. Docs. 1-2, 12 at ¶¶ 5–6. Bradshaw agreed with his trial counsel that it was in his interest not to call Foster as a trial witness. Docs. 1-2, 12 at ¶ 8.

Following the filing of Bradshaw's trial counsel's affidavit, the Government responded and filed a motion to dismiss and memorandum in support on September 29, 2021. Docs. 16, 17, 18. On October 29, 2021, Bradshaw requested additional time to file his response to the motion to dismiss, Doc. 20, which this Court granted. Doc. 21. On December 20, 2021, Bradshaw made another request for additional time to answer, Doc. 22, which this Court granted extending the time for Bradshaw to respond to February 1, 2022. Doc. 23.

On February 23, 2022, this Court granted the Government's motion to dismiss, Doc. 17, after reviewing the pleadings and record. Docs. 24, 25. Bradshaw's request for reconsideration, Doc. 26, filed on March 14, 2022, states that he was prevented from making a filing due to a transfer to FCI Forrest City Low on February 17, 2022, and then a subsequent isolation period in his new prison facility that prevented him from gaining access to his legal materials until March

---

¹ The record supports the information in trial counsel's affidavit. After the prosecution rested its case, Bradshaw discussed with counsel on September 19, 2018, in the presence of the court reporter, whether to call Foster and agreed he did not wish to do so. See Docs. 1-2, 12 at ¶ 7.
² This Court uses initials to protect the identity of the cooperating witness.

3

8, 2022. Bradshaw's filing provided no reason why the denial of his § 2255 motion was mistaken and no further argument or grounds for § 2255 relief beyond the statement, "Petitioner maintains his innocence." Doc. 26.

## II. Discussion

A district court's decision on a motion for reconsideration rests within its discretion. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 413 (8th Cir. 1988). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Id. at 414 (citation omitted). Bradshaw presents no newly discovered evidence and no argument of any error of law or fact. His request rests on a limited period of time when he could not access legal materials to reply to the Government's motion to dismiss.

While it is conceivable that the inability to prepare a motion due to lack of access to legal materials could be a situation which justifies reconsideration, this is not such a case. The Supreme Court of the United States has discussed certain scenarios where lack of access to prison libraries or legal assistance programs would result in a constitutional violation. Lewis v. Casey, 518 U.S. 343, 351 (1996) (stating that inmates have no abstract right to prison libraries, but that an inmate "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." (cleaned up and citation omitted)). Ultimately, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. (cleaned up and citation omitted). Here, Bradshaw had enough access to legal

materials to present his § 2255 petition and understood his filing deadlines having been granted multiple extensions by this Court to respond before it evaluated the substance of his claim based on the records before it. Docs. 21, 23. The Government filed a motion to dismiss and memorandum in support on September 29, 2021. Doc. 17. This Court granted Bradshaw's requests for additional time and ultimately denied the § 2255 motion on February 23, 2022. Docs. 21, 23, 24. Bradshaw had almost five months to reply and never did so.

Moreover, Bradshaw still has presented no argument or evidence supporting the merits of the § 2255 motion other than professing his innocence. Doc. 26. Section 2255(b) provides that petitions are to be dismissed if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Case law supports dismissing § 2255 petitions when records of the case show conclusively no chance of relief. See, e.g., Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (When considering a § 2255 motion, the court holds an evidentiary hearing "unless the motion and the files and the records of the case conclusively show that [the prisoner] is entitled to no relief." (cleaned up and citation omitted)); Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) ("A § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." (cleaned up and citation omitted)); Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." (cleaned up and citation omitted)).

Based on the "motions," "files" and "records of the case" that demonstrated conclusively Bradshaw was not entitled to relief, this Court dismissed Bradshaw's § 2255 petition on the merits

5

upon an analysis of the substance of his allegations of ineffective assistance of counsel. Docs. 24, 25. As this Court explained in that opinion and order, to succeed on an ineffective assistance of counsel claim, Bradshaw would need to show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Bradshaw can show neither. As this Court explained, Bradshaw cannot satisfy the first part of the Strickland test because the decision not to call Foster as a witness was part of a rational trial strategy. "The decision not to call a witness is a virtually unchallengeable decision of trial strategy." Ford v. United States, 917 F.3d 1015, 1024 (8th Cir. 2019) (citation omitted). The Eighth Circuit has stated courts should afford "counsel's decision in such matters some deference because there is considerable risk inherent in calling any witness; if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences against the party who called him or her." Id. at 1025 (cleaned up and citation omitted).

Bradshaw's trial counsel made the decision not to call Foster for reasons that were objectively reasonable given the substantial risk of impeachment and deference to be afforded trial strategy. See United States v. Orr, 636 F.3d 944, 955–56 (8th Cir. 2011) (holding a district court was correct in holding counsel's decision not to call a witness reasonable given "the potential costs of calling the witness outweighed the potential benefits" (cleaned up)); see also United States v. Staples, 410 F.3d 484, 489 (8th Cir. 2005) ("In light of the deferential presumption, the prospects for impeachment, and the risk inherent in calling any witness," the Eighth Circuit concluded defense counsel "did not perform in an objectively unreasonable manner by deciding not to call the two witnesses."). After all, the attorney for Foster advised that Foster was likely to invoke his Fifth Amendment right if called which could have led the jury to infer that he was in fact in a

6

conspiracy to distribute methamphetamine with Bradshaw. Foster had admitted in a signed factual basis statement and on the record during his change of plea hearing that he was in a conspiracy to distribute methamphetamine with Bradshaw. Even if Bradshaw was right that Foster would have testified to exculpate Bradshaw consistent with his post-plea retraction, then Foster could have been impeached with his factual basis statement, his affirmation under oath at his change of plea hearing that the factual basis statement was completely accurate, and potentially with testimony from A.G. that Foster said he was not going to testify against Bradshaw because he feared retaliation from Bradshaw. It was not ineffective assistance of counsel for Bradshaw's trial counsel to choose not to call Foster as a witness.

Bradshaw asserted in his petition that his counsel did not discuss the "pros and cons" of calling Foster to testify. Doc. 1. However, a review of the transcript of the discussion between Bradshaw and his counsel demonstrate that Bradshaw was aware of the potential benefits of Foster's testimony (i.e., the possibility of examining Foster on a conversation where he allegedly recanted to law enforcement that Bradshaw was part of the drug conspiracy), and pitfalls (i.e., that Foster would likely refuse to answer any questions and that if Foster did testify, prosecutors would impeach him with his plea agreement and factual basis statement implicating Bradshaw). In fact, after confirming Bradshaw and his counsel had read and discussed a transcript of the interview where Foster recanted his allegations against Bradshaw and Foster's plea agreement, factual basis statement and transcript of change of plea hearing in which Foster implicated Bradshaw, Bradshaw's counsel confirmed with him regarding the decision to refrain from calling Foster to testify. Doc. 1-2 at 8–9.

> BRADSHAW'S COUNSEL: "And I think I may have covered this, but I just want to be sure. You heard what he told the judge in court at his change of plea hearing, correct?"

7

BRADSHAW: "Yes."

BRADSHAW'S COUNSEL: "We read that transcript?"

BRADSHAW: "Yes."

BRADSHAW'S COUNSEL: "After our conversation, you determined that, weighing the pros and cons, you do not wish to call Antonio Foster to the stand; is that correct?"

BRADSHAW: "Yes."

Doc. 1-2 at 8–9. Bradshaw in fact agreed at trial with the decision not to have Foster testify. Bradshaw's request for reconsideration does not change these core facts.

Even if the first prong of the Strickland test were satisfied, Bradshaw is unable to show the failure to call Foster would have resulted in a different verdict meaning he cannot satisfy the second portion of the Strickland test. To determine whether Bradshaw was prejudiced by his counsel's failure to call a certain witness to testify, this Court considered "the totality of the evidence before the judge or jury," to "gauge the likely outcome of a trial based on this total body of evidence." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006) (cleaned up and citation omitted). As this Court explained in its prior opinion and order, Foster, even if called, was likely to remain silent on the stand, providing no benefit to Bradshaw. Alternatively, if Foster had recanted his change of plea and factual basis statement about being involved with Bradshaw in a methamphetamine distribution conspiracy, the Government would have impeached his testimony during cross-examination with evidence of Foster's plea agreement, factual basis statement, and transcript from the change of plea hearing, as well as potentially introducing highly prejudicial impeachment evidence from A.G. of Foster saying he was recanting out of fear of Bradshaw.

Finally, even if Foster had testified favorably and survived impeachment, there was other evidence that implicated Bradshaw in the drug distribution conspiracy. Several witnesses testified

8

that Foster and Bradshaw had come to the Rosebud Indian Reservation together. Witnesses had testified that Foster and Bradshaw traveled together in the same car, stayed at the same place on the Reservation, and were together when Foster was selling methamphetamine both at a residence and from the car. When law enforcement descended on the place where Foster and Bradshaw were staying together, they attempted to flee in the same car. When the car got hung up in a fence as they fled, both jumped out of the car and ran from law enforcement. Evidence of methamphetamine distribution was found both in the car and with Foster. On appeal, the United States Court of Appeals for the Eighth Circuit discussed why the evidence was sufficient to convict Bradshaw on both counts. United States v. Bradshaw, 955 F.3d 699, 705 (8th Cir. 2020), reh'g denied (June 5, 2020). Bradshaw has not proven that the failure to call Foster to testify prejudiced his proceedings to the degree risking constitutional error under the second prong of the Strickland test. See Jackson v. United States, 956 F.3d 1001, 1007 (8th Cir. 2020) (denying § 2255 petition because the "quantity of evidence against [defendant] shows that he was not prejudiced by [counsel's] failure to subpoena the two witnesses").

The record conclusively demonstrates Bradshaw is not entitled to relief. Because Bradshaw offers no new evidence nor explains how denying his petition would result in a manifest error of law, this Court denies his motion for reconsideration of his § 2255 petition.

**III. Conclusion and Order**

For the reasons explained above, it is hereby

ORDERED that Bradshaw's motion to reconsider, Doc. 26, is denied.

DATED this 28th day of March, 2022.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE
